273 So.2d 884 (1973)
KOHLMEYER AND COMPANY
v.
Robert P. SOBERT.
No. 9243.
Court of Appeal of Louisiana, First Circuit.
February 20, 1973.
Rehearing Denied March 19, 1973.
Writ Granted May 17, 1973.
*885 Stanwood R. Duval, Jr. (Duval, Arceneaux, Lewis & Gaidry), Houma, for appellant.
Earl S. Eichin, Jr. (Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher), New Orleans, for appellee.
Before LOTTINGER, ELLIS and CRAIN, JJ.
CRAIN, Judge.
Appellee, Kohlmeyer and Company, instituted this suit against appellant, Robert P. Sobert, for the recovery of $3,131.50 representing the unpaid debit balance in Sobert's commodities account. The lower court rendered judgment in favor of Kohlmeyer for $3,131.50 and in addition for $249.00 in "special costs" from which this appeal is taken.
There are no written reasons for judgment filed in the record and thus we do not have the benefit of the trial court's findings. However, from the record the following facts appear clear. The appellant, Robert Sobert, maintained a commodities account with Kohlmeyer at its Lafayette office. Under the customer's agreement entered into between Kohlmeyer and Sobert which governs the agency relationship existing between them, it is required in Paragraph 8 that at all times the customer will maintain margins for his accounts as required from time to time. Under the commodity account agreement entered into between Sobert and Kohlmeyer, Kohlmeyer had the right to demand additional security, and also the right to liquidate the account if the additional security was not promptly paid on demand.
At the beginning of the trading day on Friday, May 5, 1967, the appellant's current account position was long on four contracts for "pork bellies" and short on four others. This position is commonly called a "straddle" and is achieved when the customer has purchased certain contracts (bought long) and sold an equal number of contracts which he must purchase in the future to make delivery (sold short).
When a contract is purchased (bought long), and the market goes up, the value of the contracts bought goes up. If a contract is sold in the future (sold short) and the market goes up, then the seller loses because he has to purchase in order to make delivery and the higher the cost to him the more money he loses. If a person is "straddled" and the market goes up, he gains on the "longs" and loses on the "shorts", thus holding his position relatively stable. During the day of May 5th, Sobert's account reveals that he sold all four contracts he had purchased, leaving him in a short position on four other contracts, and requiring the market to go down in order for him to make or avoid losing money. His position did not change prior to closing on Friday.
On the following Monday, the market rose the limit, therefore subjecting him at that time to approximately $450.00 per contract in potential losses. The record further reveals that on that same day, Sobert sold two more contracts short with the expectation that the market price of the commodity would decline. Unfortunately, however, the market again rose the next day. As a result of the potential losses incurred, his broker required that he increase the amount of his margin account to meet applicable exchange regulations. He was promptly notified of the necessity to provide additional funds, but by May 11, 1967, he had failed to do so. Based on this failure, Kohlmeyer, through its agent, liquidated his positions which resulted in a $3,131.50 debit balance constituting the amount claimed by Kohlmeyer in this suit.
Sobert, who acted as his own attorney in the trial court, strenuously contended that he had ordered his broker to "straddle him in" on Friday, May 5, claiming that if this had been done then the loss would have been eliminated. The brokers and agents of Kohlmeyer testified that they had not received any such instructions *886 and that although they advised Sobert to straddle, he refused to do so expecting the market price to decline. The trial court apparently found that the appellant failed to sustain his burden of proving that he gave instructions to straddle and we find no manifest error in this finding.
Sobert further contends that his broker should have taken action to minimize the substantial losses he incurred over and above the amount that was contained in his margin account. The trial court apparently found this contention equally fallacious and we find no manifest error in this conclusion. No evidence was produced nor have we been cited any authority that would impose a duty upon the broker to take any specified action in an attempt to minimize the customers' losses under the circumstances in this case. The cases cited to us by appellant to support his position namely Winston v. F. A. Longshore & Co., 116 La. 21, 40 So. 517 (1906) and Estes v. Garrison, et al., 147 La. 425, 85 So. 63 are distinguished by the fact that the customer had given his broker specific instructions for actions to be taken not to incur losses in excess of the margin of his account. The record supports the conclusion that no such instructions were given in this case.
The trial court also must have concluded that the appellee, under its brokerage contracts, had the right to require the furnishing of additional margin funds and in default of such to liquidate Sobert's position. We find no manifest error in this finding nor in the trial judge's apparent conclusion that Sobert was afforded a reasonable time in which to bring his margin account up to the required level.
Sobert contends on appeal that the case should be remanded to allow the introduction of additional evidence in the form of the testimony of Jerry Mitchell, a witness who was not present to testify at the trial. The record reflects that this case had a protracted course, the trial having been interrupted initially by Hurricane Camille and then at a later date having been continued when Sobert failed to appear. The record further reveals that Sobert did not request a continuance nor did he request to have the record held open in order to secure Mitchell's testimony after the conclusion of the trial. The necessity of producing Mitchell's testimony has been raised for the first time on appeal. There is no doubt that Sobert had knowledge of Mitchell's testimony and its potential value to his case, but chose to proceed. Thus, we do not feel that the ends of justice would be served by a remand.
Lastly, Sobert contends that the trial judge's award of $249.00 in special costs plus legal interest thereon was erroneous. The record reveals that these special costs stemmed from certain expenses and loss of earnings suffered by the appellee and its witnesses who attended the hearing scheduled for January 10, 1972, which did not take place due to Sobert's absence. At the trial evidence was introduced to show these expenses and costs which included such items as travel expense, meals, lodging, loss of commissions, etc. The trial court taxed appellant $249.00 for "special costs". We have no way of knowing how this figure was reached, but agree with appellee that it must contain at least a portion of the special expense items claimed since it is termed "special costs." The only cost a litigant can be required to pay are those provided for by positive law. Succession of Franz, 242 La. 875, 139 So. 2d 216. The amount that can be taxed as costs for a witness fee is specifically provided for by law in R.S. 13:3661 and 13:3671. Insofar as the judgment of the trial court assesses cost for witnesses in excess of the amount provided for in the above statutes, it is in error and must be reversed. The same is true with reference to the expenses of the attorney for which there is no provision in the law.
Since the "special costs" are disallowed, the legal interest thereon is also disallowed.
*887 The trial court is affirmed insofar as judgment was rendered in favor of appellee and against appellant in the amount of $3,131.50 together with legal interest from date of judicial demand until paid and all costs of this proceeding. The judgment is reversed as to allowing appellee's demands for special costs.
Affirmed in part, reversed in part, and rendered.