KLIEBERT, Judge.
Johnson Bros. Corporation, d/b/a Johnson Bros. Corporation of Louisiana, plaintiff-appellee, brought suit against the State of Louisiana, through the Department of Transportation and Development, for payment (at the contract price of $15.00 per yard) of 6,418.2 (7,231.4 cubic yards utilized minus 813.2 admittedly due) cubic yards of backfill material utilized in laying drainage conduits and culverts under a construction contract entered into by the parties for the extension of Earhart Boulevard in Jefferson Parish. The State denied payment was due because under the State engineer’s interpretation of the contract documents the cost of the backfill material for the drainage conduits was not a special bid item. Rather, the State contends the cost of the backfill material was to be included in the linear foot bid price for the laying of the drainage pipe.
The trial court disagreed with the State’s interpretation and awarded Johnson $96,-273.00 (6,418.2 x $15.00 per cubic yard) together with legal interest from March 25th, 1986. Further, it assessed the State as court costs $750.00 to each of the two out-of-state, non-expert witnesses and $10,-000.00 for attorney fees. The trial court did not give reasons for its judgment. The State suspensively appeals. For the reasons hereafter stated, we amend the judgment to delete the award for non-expert witness fees and the attorney fees and, as so amended, affirm.
Both litigants agree the contract documents include the bid proposal, the contract, the specific plans and specifications for the project, and the 1982 Edition of the State’s Standard Specifications for Roads and Bridges. The total quantity of backfill material utilized and the unit price ($15.00 per cubic yard) is not disputed. However, each litigant makes its own interpretation of the contract documents and based on their respective interpretation reaches opposite conclusions on the issue of payment for the backfill material as a separate bid item. Moreover, the State takes the position the State engineer’s interpretation is, by virtue of specific contract provisions,[1] the controlling interpretation.
Section 105.04 at page 23 of the Louisiana Standard Specifications for Roads and Bridges, Plaintiff Exhibit 2, provides in pertinent part as follows:
“.... In case of discrepancy, calculated dimensions will govern over scaled dimensions; plans will govern over standard specifications or supplemental specifications; supplemental specifications will govern over standard specifications; special provisions will govern over standard specifications, supplemental specifications and plans.”
The State contends this specifies an order of precedence in which the contract documents are to control the work and the payment for that work. It summarizes the order of precedence from the least importance to the most importance as follows:
1. Special provisions
2. Plans
*156 3. Supplemental Specifications
4. Standard Specifications (1982 Louisiana Standard Specifications for Roads and Bridges).
Additionally, the State contends there are two basic types of plans, i.e., standard plans, and those prepared solely for construction of a specific project. The more specific the document, the higher in precedence is the document. Thus, the plans prepared solely for construction of a specific project takes precedence over the standard plans.
Utilizing the above stated standards for interpretation of the contract documents involved here, the State points to Plan Sheet No. 25,[2] a chart which contained a summary of all drainage structures to be constructed under this project. This plan has designated columns from which the contractor is informed as to what is to be constructed, where it is to be constructed, and, according to the State’s counsel, how it is to be paid for. More specifically, Sheet No. 25 contains a column headed “Backfill Mat’l Conduits (Sand)” which shows an extension of 609.6 cubic yards (subsequently by change order revised to 813.2 cubic yards) for a reinforced concrete box culvert. There are no other extensions under the column. The State argues that the only backfill material to be paid for as separate bid and pay items are those conduits and culverts which have a quantity of backfill material listed in this column. There is, however, no specific statement to that effect in the contract documents including Plan No. 25.
On the other hand, Johnson points first to the bid proposal which contains instructions to bid on each item (backfill material is listed as an item) and then to Section 701.11, at page 209 of the 1982 Standard Specifications for Road and Bridges, Exhibit P. 2, which provides that when an item for conduit backfill is included in the contract, conduit backfill is to be paid for by the cubic yard. Then it points to Sheet No. 22 of the Standard Plans which is a schematic which graphically shows how the backfill material is to be measured and placed in the culverts and conduits. Page No. 22 of the plans also contains the following note:
“When both Bedding and Backfill material are called for, this Material is to be the same Material used for Bedding, but will be paid for as Backfill.
When only Bedding Material is specified, then the volume of this Material is not to be computed, but the cost shall be included in the price bid for the catch basin.”
Johnson contends Sheet No. 22 of the plans is thus a cross-section schematic which graphically described the pay limits, i.e., the volume of material for culverts and conduits the State will pay for. According to its witness, in undertaking the performance of their obligations, Johnson interpreted the bid package, contract, plans and specifications to require a unit price bid for all drainage conduit backfill material requirements and submitted its bid accordingly.
We have carefully reviewed the contract documents and the affidavits and/or testimony of the witnesses. Since the documents and plans are designed to have backfill materials separately bid or have it included as part of the linear bid price for the conduit, to determine which is applicable in a particular instance would require a specific declaration of which is to be followed as to each culvert or conduit. Although counsel for the State contends Special Plan No. 25 serves that purpose, we see nothing in the plan which would indicate to us that the State intended a separately bid item only for the amount of backfill material extended under the column headed “Backfill Mat’l Conduits (Sand).” Hence, we conclude the provisions in the contract in dispute are at best ambiguous.
When an ambiguity exists in the language of the contract, the contract must be construed against the party who prepared it. LSA-C.C. Articles 2056, 2057; Kenner *157 Industries v. Sewell Plastics, 451 So.2d 557 (La.1984); Jefferson Disposal Co. v. Jefferson Parish, 459 So.2d 639 (5th Cir.1984) writ denied, 462 So.2d 649 (La.1985).
Moreover, in our view the State’s contention its chief engineer’s interpretation of the contract is the controlling one is without merit. First, the contract provisions (cited at Footnote 1) do not have the meaning ascribed to them by the State’s counsel. As we interpret these provisions, “the engineer is given authority to oversee the quality and quantity of work performed.” His authority, however, is limited to “engineering supervision of the project.” Further, even if his authority was broader, it could not cover the authority to decide legal issues. The courts are not precluded from resolving a dispute based on contractual provisions stating the owner’s engineer has complete authority to resolve disputes. See Shea v. Sewerage and Water Board, 124 La. 299, 50 So. 166 (La.1909).
For the reasons above stated therefore we cannot say the trial court’s ruling awarding $96,273.00 to Johnson for required contractual conduit backfill was error. Rather, we agree with the ruling.
Defendant next argues the trial court erred in assessing non-expert-out-of-state witnesses’ fees and plaintiff’s attorney’s fees as court costs.
LSA-R.S. 13:4533 provides a witness’ fee shall be taxed as costs of court. LSA-R.S. 13:3671 provides expenses of a lay witness who was subpoened to testify in the amount of $8.00 per day for every day’s attendance, as well as $.16 per mile travel expense if he lives more than twenty-five miles from the courthouse, are taxable as costs. However, there is no evidence of record that either witness was subpoenaed to testify or the mileage they traveled to attend the trial, requiring we reverse the assessment of costs. See Kohlmeyer and Co. v. Sobert, 273 So.2d 884 (1st Cir.1973) affirmed, 286 So.2d 342 (La.1973); D’Angelo v. NOPSI, 405 So.2d 1262 (4th Cir.1981) writ denied, 407 So.2d 748 (La.1981).
Additionally, as there is no contractual provision or provision of law allowing an award for attorney’s fees, the trial court erred here also in assessing this amount as court costs. Kohlmeyer, supra; Rutherford v. Impson, 366 So.2d 944 (1st Cir.1979) writ refused, 369 So.2d 140 (La.1979).
For the foregoing reasons, the judgment of the trial court is amended to exclude the award of non-expert witness fees and attorney fees and, as thus amended, affirmed. Each party is to bear his own costs of the appeal.
AMENDED AND, AS AMENDED, AFFIRMED.

. These provisions are the following sections of the 1982 Edition of Louisiana’s Standard Specifications for Roads and Bridges:
Sec. 101.45 provides as follows:
"PROJECT ENGINEER. The engineer assigned to one or more construction projects to represent the Department through the Chief Engineer.”
Sec. 105.01 provides as follows:
"AUTHORITY OF THE ENGINEER. The engineer will decide all questions which arise as to the quality and acceptability of materials furnished and work performed, rate of progress of the work, Interpretation of plans and specifications, and acceptable fulfillment of the contract by the contractor ...”

. Although not so marked, the State contends this is a special plan and hence takes precedence over other plans.